Jackson and Lester vs. Waters.

---

No. 78.—JANE JACKSON and LEWIS LESTER, plaintiffs in error, *vs.* JAMES L. WATERS, administrator of Anna Hackett, deceased, defendants.

[1.] It is only necessary for remainder-men and reversioners, to state their case in the terms of the Act of 1830, in order to entitle them to the remedy therein provided; they need not specify in their bill, the threatened wrong or probable ground of possible injury, to enable them to obtain the assistance of the Court to avert the peril.

[2.] The defendant, under the Act of 1830, may, by answering, controvert the title of the complainant; and if the decree of the Jury be against its validity, he will be released from his obligation for the forthcoming of the property.   Otherwise, the security which he has given will continue.

[3.] The Act of 1830, to preserve the rights of remainder-men and rever-sioners, contemplates that the bill should be filed and the security given, in the County where the person resides, who has the possession or control of the property; and unless special cause exist, the jurisdiction cannot be transferred.

[4.] The fact that different portions of the property claimed are held in se-veral Counties, is not sufficient, especially where the title is not the same, through which the respective owners derive their right.

[5.] The fact that a party is interested in the decree, is a sufficient reason why he should be made a co-defendant to the bill, and he may be brought out of his County for this purpose.

Demurrer, in Franklin Superior Court. Decided by Judge JAMES JACKSON, September Term, 1851.

James L. Waters, administrator of Anna Hackett, deceased, filed his bill in Franklin Superior Court, alleging the following facts: that Anna Hackett, in her life time, to wit: in 1815, made a deed of gift to Jane Subtle, now Jane Jackson, of a ne-gro woman, named Milly, and her increase, with a reservation, that in case the said Jane should die without children, then the property to revert to the donor; that in 1839, Anna Hackett made a conveyance of her reversionary interest to one Anna Terrell, who had procured Jane Jackson, the tenant for life, to surrender to her a portion of the negroes, and had afterwards conveyed her interest in the remaining negroes, which are still in the possession of Jane Jackson, to Lewis Lester. The bill went on to attack the deed from Anna Hackett to Anna Terrell, as fraudulently obtained and void, and asserted that the reversion of the property was in the estate of Anna Hackett, now deceas-ed, and prayed that the deed might be delivered up to be can-celled. The bill further prayed, that the several parties in pos-session of the negroes, might be required to give bond and se-curity for the forthcoming of the property, at the termination of the life estate of Jane Jackson, who was alleged to be about sixty-four years of age, and childless. Lewis Lester was not charg-ed to have possession of any of the negroes.

Some of the defendants lived in the County of Franklin, but Jane Jackson and Lewis Lester resided in the County of Clarke.

To this bill a demurrer was filed, on the part of Jane Jackson and Lewis Lester, on the following grounds, to wit:

1st. Because there is no equity in said bill as to these defendants.

2d. Because these defendants have been improperly made parties to said bill.

3d. Because the bill shows these defendants to have been residents of the County of Clarke, at the time of filing this bill, and no sufficient cause is charged therein to make them proper parties to a suit out of the County in which they reside.

On hearing this demurrer, the same was overruled by the Court, to which decision defendants excepted.

DOUGHERTY, for plaintiffs in error.

COBB & HULL, for defendant.

*By the Court.*—LUMPKIN, J. delivering the opinion.

[1.] Is there any equity in this bill? It seems to be drawn in literal conformity to the Act of 1830, for the protection of the rights of remainder-men and reversioners, in personal property. That Act provides, that "It shall and may be lawful for any Judge of the Superior Court of this State, on application to him by bill, at the instance of any person or persons claiming personal property in remainder and reversion, to grant a writ of *ne exeat,* or other sufficient process, to restrain the person or persons having the control or possession of such property, from removing the same beyond the limits of this State, or to give good and sufficient security, residing in the County, to the party claiming, in a sufficient penalty, to be fixed by such Judge, that the property shall be subject and accessible to the demand of the person or persons entitled thereto, in the County wherein such property may be at the time of issuing such writ : *Provided,* that the person or persons, or one of them, sueing for the benefit of such writ, shall make affidavit of his, her or their right to, and the value of the property in question, and that he, she or they

Jackson and Lester *vs.* Waters.

entertain serious apprehensions that the property will be removed beyond the limits of this State, and that his, her or their rights will be impaired, unless a remedy be afforded for the preservation thereof." *New Digest*, 527.

It is insisted on the part of the defendants below, that the allegations in this bill are not sufficient to entitle the complainant to the redress which he seeks; that he should have set forth some facts which would be issuable, and which, if true, would go to show that the rights of the complainant were in jeopardy.

Our view of the Statute is, that whenever a party brings himself within its terms, that then he may claim the benefit of its provisions. If he will make oath of his interest in the property, and of the value thereof, and that he entertains serious apprehensions that it will be removed beyond the limits of the State, so that his rights will be impaired unless a remedy be afforded for the preservation thereof, he may claim the protection which the Act was designed to give, and that he need not be more full or definite in stating the threatened wrong, to obtain the assistance of the Court to avert the impending danger.

[2.] And the security taken will be continued, unless the defendant see fit to contest *the right* of the complainant, which it is competent for him to do. He may, by answering the bill, put the complainant's right in issue, and have a decree of the Jury as to its validity. If they pronounce against it, the defendant will then, of course, be relieved from the obligation for the forthcoming of the property.

Should this construction of the Statute seem rigid, I would refer to the Act of 1830, requiring purchasers, at public sales, of mortgaged personal property, or of life estates in personal property, to give bond and security to the proper officer, not to remove it out of the State, and to deliver the same to the persons ultimately entitled thereto, upon the filing of the affidavit of the mortgagee or remainder-men, their agent or attorney, of their rights thereon, with the Sheriff, Coroner or Constable selling the same. In case of mortgages, the creditor, in addition to his being a just and *bona fide* mortgagee, has to swear that he appre-

hends the loss of said property, unless bond be given in terms of the Act. *New Digest,* 513.

With respect to this latter Statute, it will be admitted, that the Rule of Equity Pleading, requiring the complainant to state a probable ground of possible injury, is entirely dispensed with; for it is strictly a Common Law, and not a Chancery proceeding. Now both of those Acts were passed at the same session, and were approved within one day of each other—the one on the 22d and the other on the 23d day of December, 1830. They both stand upon the same footing of reason and justice. Why interpret the one differently from the other? Ought not, rather, the pithy old maxim to apply, *noscitur a sociis?*

[3.] Ought Jane Jackson to have been made a party defendant to this bill? It is true that she has in her possession a portion of the negroes; but does that, of itself, constitute a sufficient reason for transferring the jurisdiction from Clarke County, where she lives, to Franklin County, because some of the slaves are held by other persons there?

[4.] We think not, and especially as there is no privity of estate between her and the other defendants in the case. She derives her right from the deed of Anna Hackett, conveying to her in 1815, the life estate in this property. The validity of this deed is not impugned. The rest of the defendants claim title by virtue of a deed from Anna Hackett to Anna Terrell, executed in 1839, and disposing of the reversionary interest in those negroes. This deed is alleged to be fraudulent and void, and to vacate it is one of the main objects in instituting this proceeding.

The Statute undoubtedly contemplates that the bill should be filed, and the security given in the County where the person resides, having possession or control of the property, and unless some special reason exists to the contrary, this rule should be observed and enforced. None such, in our judgment, appears on this record.

[5.] The case of Lewis Lester is different. For while it is admitted that he has none of the property in his possession, still

he should be made a party, for another reason; he is vitally interested in the decree to be rendered.

If the deed from Anna Hackett to Anna Terrell is good, then Waters, the complainant, is not entitled to this remedy. Whether the property remains or is removed, is a matter which does not concern him. As administrator of Mrs. Hackett, he has no interest in it, reversionary or otherwise. Hence the necessity of removing the cloud upon the title of his intestate. And inasmuch as Lewis Lester claims under this deed, which is thus sought to be annulled and set aside, it is important to him to have an opportunity of defending it. And one decree should settle this whole controversy; and this, not only to save a multiplicity of suits, but to avoid the anomalous result of having a different finding upon the same title in different Counties—in Franklin County against it, in Clarke for it. We sustain the Court in retaining the bill as to Lester.